[Cite as *State v. Johnson*, 2016-Ohio-3000.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| CHARLES JOHNSON | : | Case No. 15CA89 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Richland County
                                 Court of Common Pleas, Case No.
                                 2015-CR-432



JUDGMENT:                        Affirmed



DATE OF JUDGMENT:                May 13, 2016



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

BAMBI COUCH PAGE                          WILLIAM C. FITHIAN, III
Prosecuting Attorney                      111 N. Main Street
                                          Mansfield, Ohio 44902
By: DANIEL M. ROGERS
Assistant Prosecuting Attorney
38 S. Park Street
Mansfield, Ohio 44902

*Baldwin, J.*

{¶1}   Appellant Charles Johnson appeals a judgment of the Richland County Common Pleas Court convicting him of felonious assault (R.C. 2903.11(A)(1)) and aggravated burglary (R.C. 2911.11(A)(1)) and sentencing him to a term of incarceration of fourteen years.  Appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   Appellant was married to Amanda Hatfield.  In November of 2014, Hatfield moved out of the home she shared with appellant because appellant was romantically involved with Stephanie Carter.  Hatfield alternated between staying with her mother and staying with Russell Breinich II.  Breinich lived in a home Hatfield had purchased several years earlier, when she was dating Breinich.  In March of 2015, Carter moved in with appellant.

{¶3}   During the afternoon of April 24, 2015, appellant and Carter went to visit Breinich, who was a friend of appellant.  Hatfield was there, and the group hung out at the home until about 6:00 p.m.  Appellant and Carter then went to the home of another friend, while Hatfield and Breinich went to a local bar.  Appellant and Carter arrived at the same bar at about 8:00 p.m.  Breinich and Hatfield finished their beers and went home.  Before going to bed, Breinich wedged a wooden board against the front door, as the door did not lock from the inside.

{¶4}   Appellant and Carter returned to a friend's house at about 10:00 p.m.  They left less than thirty minutes later, and Carter believed they were returning home.  However, appellant stopped at Breinich's house to see if he wanted to have a few drinks.  As Carter sat inside the truck, she saw appellant knock at both the front door and a side

door that led to a carport. Hatfield, hearing the pounding at the door, woke up Breinich. Appellant kicked open the front door, punched Breinich in the face, and knocked Breinich unconscious. Appellant straddled Breinich and continued punching him in the head while yelling, "Do you like fucking my wife?" Tr. 146, 171. Hatfield jumped on appellant's back and attempted to pull him off Breinich. Carter ran from appellant's truck, screaming at appellant to stop.

{¶5} Appellant climbed off Breinich and drove back to his friend Chris Smith's house. Carter chose to walk rather than ride in the truck with appellant. At Smith's house, appellant washed his hands and face, took off his blood-stained sweatshirt, and asked one of the people at the home to get rid of his sweatshirt. He and Carter then drove to their home.

{¶6} Meanwhile, Hatfield called Chris Smith for help because Breinich did not want her to call an ambulance. Upon arriving at the scene, Smith called 911. Breinich was taken to the local hospital, where he was intubated because he was choking on his own blood. He was then life-flighted to Grant Medical Center in Columbus. His injuries included multiple facial fractures, brain damage, and damage to his left eye, left ear, trachea, and teeth. He spent five days in the intensive care unit and another twenty-three days in the trauma unit at Grant Medical Center. He was then transferred to the Dodd Rehabilitation Center where he spent fourteen days. He had five surgeries prior to trial and needed additional dental, eye and ear surgery. He continued to suffer memory loss, and required round-the-clock supervision from his parents.

{¶7} Appellant was indicted by the Richland County Grand Jury on felonious assault and aggravated burglary. The case proceeded to jury trial in the Richland County

Common Pleas Court. Appellant was convicted as charged and sentenced to eight years incarceration for felonious assault and six years incarceration for aggravated burglary, to be served consecutively. He assigns a single error:

{¶8} "THE CUMULATIVE EFFECT OF APPELLANT'S TRIAL COUNSEL'S DEFICIENT REPRESENTATION PREJUDICED APPELLANT."

{¶9} Appellant argues that his trial counsel was ineffective by failing to make an opening statement, failing to object to the State's failure to lay a proper foundation for the admission of photographs, and conceding in closing statement that appellant was guilty of felonious assault.

{¶10} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id*.

{¶11} Appellant first argues that counsel was ineffective for waiving opening statement.

{¶12} The decision not to make an opening statement is viewed as a tactical decision to which a reviewing court must be highly deferential. *State v. Wade,* 5th Dist. Richland No. 00CA93, 2002-Ohio-2891, citing *Strickland v. Washington, supra*, and

*Bradley, supra,* at 144. In the instant case, the evidence of guilt was overwhelming. Although Breinich did not remember the beating, he did remember someone breaking through the front door, and seeing appellant for a split second. Hatfield and Carter both testified that appellant beat up Breinich while yelling, "Do you like fucking my wife?" Mansfield Police officers Joseph Soehnlen and Jeffrey Gillis observed that the door to Breinich's home appeared to have been kicked open, and Gillis observed blood on the interior of appellant's truck. Medical testimony was presented concerning the extensive nature of Breinich's injuries. Appellant has not demonstrated prejudice from counsel's failure to make an opening statement.

{¶13} Appellant next argues that counsel should have objected to the admission of photographs labeled Exhibits 4, 5, 10 and 15, on the basis that the State failed to prove that they fairly and accurately represented the subject.

{¶14} Evid. R. 901(A) provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Accordingly, A photograph is admissible in evidence if it is shown to be an accurate representation of what or whom it purports to represent. *State v. Hannah,* 54 Ohio St.2d 84, 88, 374 N.E.2d 1359, 1362-63 (1978).

{¶15} Exhibit 4 was a picture of Breinich's face following the beating. The emergency room nurse Matt Stransky, Amanda Hatfield, and Officer Joseph Soehnlen all testified that the photo accurately depicted Breinich's face following the assault. Exhibit 5 was also a photograph of Breinich's face after the beating, and Soehnlen testified that the photograph accurately depicted Breinich's face, and that the photograph was taken

with Exhibit 4 on the night of the incident. Exhibit 10 was a photograph of Breinich's face, and Chris Smith testified that this photograph accurately depicted Breinich's face on the night of the assault. Dr. Jeff Revill testified that in his opinion, Breinich's face looked even worse in person than it did in Exhibit 10. Finally, Exhibit 15 was identified as an accurate photograph of the inside of the house on the night in question by Amanda Hatfield, Stephanie Carter, Officer Soehnlen, and Russell Breinich. Appellant has not demonstrated that had counsel objected to these photographs, they would have been excluded from evidence.

{¶16} Finally appellant argues that counsel was ineffective for conceding that he was guilty of felonious assault in closing argument. Counsel argued:

Now, you have not heard me waste your time throughout this trial talking about the felonious assault charge. I think it's abundantly clear that a felonious assault was committed on Mr. Breinich, and quite frankly no man or woman should ever suffer what that man suffered. That's not an issue here. I'm just going to tell you that right now. But I didn't waste your time talking about that.

I think you folks have already picked up on the idea of whether or not this was an aggravated burglary or not. Whether or not there was some forced entry into this residence. Did the evidence support beyond a reasonable doubt that Charles by force, stealth or deception, did trespass in this structure, which is where they were living with the specific intent to commit felonious assault.

{¶17} Tr. 291.

**{¶18}** Counsel went on to argue that the photos did not show forced entry, that no one testified that appellant did not have permission to be there, and that there was no proof that he entered the house with specific intent to assault Breinich. Counsel conceded a guilty verdict on the charge of felonious assault, but asked the jury to find appellant not guilty of aggravated burglary.

**{¶19}** In cases involving multiple charges in which there is overwhelming evidence of guilt on some charges, conceding guilt on these charges while contesting others may be a valid tactical decision, as this choice could bolster credibility with the jury. *State v. Hanning,* 5th Dist. Perry No. 01CA8, 2002-Ohio-6342, ¶31. In the instant case, the evidence was overwhelming concerning the charge of felonious assault. However, based on the testimony that appellant was with Breinich and Hatfield earlier in the day and there were no apparent problems, counsel could make a plausible argument that appellant did not enter the home with the specific intention to commit the felonious assault against Breinich. Further, appellant has not demonstrated prejudice from this argument, as the evidence on the charge of felonious assault was overwhelming and uncontroverted.

**{¶20}** The alleged instances of ineffective assistance of counsel, even when viewed cumulatively, do not demonstrate prejudice. *Bradley, supra,* at 146-47.

{¶21} The assignment of error is overruled. The judgment of the Richland County Common Pleas Court is affirmed.


By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.